O

# United States District Court
# Central District of California

| | |
|---|---|
| WB MUSIC CORP., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>LIMERICKS TAVERN, INC., et al.,<br><br>    Defendants. | Case № 2:20-cv-02086-ODW (MAAx)<br><br>**ORDER GRANTING IN PART MOTION FOR DEFAULT JUDGMENT [21]** |

## I.    INTRODUCTION

Plaintiffs WB Music Corp., Bonnie Bee Good Music, GNAT Booty Music, Naughty Music, Neutral Gray Music, Pure Love Music, Uh Oh Entertainment, Inc., Wut' Shawan-A-Do Music, Inc., and Goo Eyed Music (together, "Plaintiffs") bring this copyright infringement suit against Defendants Limericks Tavern, Inc. ("LTI"), Derrick Tcheng, and Yi-Chun Pai Tsai (together, "Defendants"), for publicly performing four of Plaintiffs' musical compositions (the "Songs")[1] without a license. (*See* Compl., ECF No. 1.)  Plaintiffs have filed a Motion for Default Judgment, which, for the following reasons, is **GRANTED**. (Mot. Def. J. ("Motion" or "Mot."), ECF No. 21.)[2]

---

[1] The four Songs are titled: "Harden My Heart"; "Hey Ya!"; "Too Close"; and "I'm Yours."  (Compl. Sched. A.)

[2] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Each Plaintiff owns a copyright interest in the musical composition of one of the Songs. (*Id.* ¶ 22, Sched. A.) Plaintiffs are also members of the American Society of Composers, Authors, and Publishers ("ASCAP"), a non-profit association that licenses its members' music on the members' behalf (as licensor) and collects and distributes royalties whenever a member's song is publicly performed. (*Id.* ¶¶ 14–15.) The Songs are part of ASCAP's repertory. (*See id.*)

LTI operates, maintains, and controls an establishment in Chino Hills, California, called Limericks Tavern. (*Id.* ¶ 6.) Tcheng and Tsai are officers, directors, and/or owners of LTI. (*Id.* ¶ 10.) Defendants jointly have the right and ability to supervise and control the activities that take place at Limericks Tavern, including what musical compositions are publicly performed during business hours. (*Id.* ¶ 12.)

Since July 2018, ASCAP has purportedly tried to contact Defendants more than fifty times regarding the need for Defendants to purchase an ASCAP license to play music from ASCAP's repertory at Limericks Tavern. (*Id.* ¶ 16; Decl. of R. Douglas Jones ("Jones Decl.") ¶ 13, Exs. 1–15, ECF No. 21-2.) Each time, ASCAP warned Defendants that unlicensed public performances of ASCAP songs constitute copyright infringement, and that Defendants needed to purchase a license if they wished to continue publicly playing ASCAP songs. (Compl. ¶ 18; Jones Decl. ¶¶ 13–14.) Yet "Defendants have refused all of ASCAP's license offers for Limericks Tavern." (Compl. ¶ 17.)[3]

On or around January 3, 2020, an independent investigator hired by ASCAP visited Limericks Tavern and took notes on which songs were publicly performed at the establishment. (Jones Decl. ¶¶ 15–16; Decl. of Scott Greene ("Greene Decl.") ¶¶ 4–6,

---

[3] The Court notes, however, that Plaintiffs appear to indicate in their Motion that Defendants *did* have an ASCAP license for Limericks Tavern at some point in the not-so-distant past. (*See* Mot. 4 ("*Following the termination of Defendants' Prior ASCAP License for Limericks*, ASCAP[] hired a third-party, independent investigator to visit the establishment . . . on the evening of January 3, 2020[.]" (emphasis added)).)

ECF No. 21-4.) During his visit, the investigator heard the four Songs publicly performed; however, Defendants had not purchased an ASCAP public performance license. (Compl. ¶ 20; Greene Decl. ¶¶ 7–8, Ex. 1.)

Based on these facts, Plaintiffs sued Defendants for four counts of infringement of their musical compositions, for publicly performing each Song without a license. (*See* Compl. ¶ 3.) Plaintiffs served the Complaint upon LTI, Tcheng, and Tsai on May 14, 2020. (*See* Proofs of Service, ECF Nos. 12–14.)[4] Defendants failed to answer or otherwise respond to the Complaint, and Plaintiffs requested entry of default on June 18, 2020. (Req. Entry Def., ECF No. 18.) The Clerk entered default against Defendants on June 19, 2020. (Entry Def., ECF No. 19.) Now, Plaintiffs move for default judgment. (*See generally* Mot.)

### III.  LEGAL STANDARD

Plaintiffs seeking default judgment must meet certain procedural requirements, as set forth in Federal Rule of Civil Procedure ("Rule") 55 and Central District of California Local Rule ("Local Rule") 55-1. *See* Fed. R. Civ. P. 55; C.D. Cal. L.R. 55-1 (requiring that applications for default judgment include: (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2)); *see also Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1006 (C.D. Cal. 2014).

Once the procedural requirements are satisfied, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Generally, a defendant's liability is conclusively established upon entry of default by the Clerk, and well-pleaded factual allegations in

---

[4] Service upon LTI and Tsai was deemed complete as of May 25, 2020. (*See* Decl. of Cassandra Havens ISO Req. Entry Def. ¶ 4, ECF No. 18-1.)

the complaint are accepted as true, except those pertaining to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Still, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Rather, the court considers several factors in exercising its discretion, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th. Cir. 1986).

## IV.  DISCUSSION

In ruling on Plaintiffs' Motion, the Court considers (A) whether Plaintiffs meet the procedural requirements for default judgment (B) whether the *Eitel* factors support an entry of default judgment, and (C) whether the relief requested is warranted.

### A. Procedural Requirements

As an initial matter, Plaintiffs satisfy the procedural requirements for an entry of default judgment. They submit declaration testimony that: (1) the Clerk entered default against Defendants on June 19, 2020; (2) default was entered based on Plaintiffs' initial Complaint; (3) Defendants are not minors, incompetent, or in military service, (4) thereby implying that the Servicemembers Civil Relief Act does not apply; and (5) Defendants were served notice of the Motion on July 22, 2020. (Decl. of Cassandra E. Havens ("Havens Decl.") ¶¶ 3–6, ECF No. 21-3.) Thus, the Court determines next whether a balancing of the *Eitel* factors warrants default judgment in this case.

### B. *Eitel* Factors

Examination of the *Eitel* factors shows that default judgment is warranted here.

### 1. Prejudice to Plaintiffs (Factor 1)

The first *Eitel* factor to be considered is whether the plaintiff will suffer prejudice if default judgment is not entered. *Eitel*, 782 F.2d at 1471. Denial of default judgment leads to prejudice when it leaves a plaintiff without a remedy or recourse to recover compensation. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendants elected not to participate in this action despite having been properly served with summonses. (*See* Proofs of Service.) Absent a default judgment, Plaintiffs would have no further recourse to recover for Defendants' copyright infringement. This factor weighs in favor of default judgment.

### 2. Merits of Plaintiffs' Claims & Sufficiency of Complaint (Factors 2 & 3)

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (alteration in original) (citing *PepsiCo*, 238 F. Supp. 2d at 1175). Although well-pleaded allegations in the complaint are admitted by the defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Here, Plaintiffs allege four counts of copyright infringement based on Defendants' unauthorized public performances of the Songs. (Compl. ¶ 3.) A successful claim for copyright infringement requires establishing two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). In this context, "[t]he word 'copying' is shorthand for the infringing of any of the copyright owner's six exclusive rights, one of which is the right to perform the copyrighted work publicly." *Id.* (internal quotation marks and brackets omitted)

(quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989); 17 U.S.C. § 106(4).)

Having examined the Complaint, the Court finds that Plaintiffs sufficiently allege meritorious claims for copyright infringement.  First, Plaintiffs adequately plead ownership of valid copyrights in the musical compositions of the Songs. (Compl. ¶¶ 4, 20–22, 27, Sched. A.)  Second, Plaintiffs sufficiently allege that Defendants infringed on Plaintiffs' exclusive rights by publicly performing the Songs without permission. (*Id.* ¶¶ 19, 23–24, Sched. A.)  These allegations make Tcheng and Tsai liable in addition to LTI, as "[v]icarious copyright liability extends to cases in which a defendant has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Elohim EPF USA, Inc. v. Aceplus, Inc.*, No. CV 14-05428 BRO (Ex), 2015 WL 13753299, at *6 (C.D. Cal. Jan. 2, 2015) (internal quotation marks omitted).  Plaintiffs allege that Tcheng and Tsai had and have the right and ability to supervise the public performance of music at Limericks Tavern, and that each derives a financial benefit from such public performances. (*See* Compl. ¶¶ 11–13.)  For these reasons, the Court finds that Plaintiffs sufficiently allege valid claims for copyright infringement by way of Defendants' unauthorized public performance of the Songs.  Thus, the second and third *Eitel* factors weigh in favor of granting default judgment against all Defendants. *See, e.g.*, *Aceplus*, 2015 WL 13753299, at *4–6.

### 3.     *Sum of Money at Stake (Factor 4)*

The fourth Eitel factor balances "the amount of money at stake in relation to the seriousness of [the] Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; *Eitel*, 782 F.2d at 1471.  The amount at stake must be proportionate to the harm alleged. *Landstar*, 725 F. Supp. 2d at 921.  Here, Plaintiffs seek statutory damages, attorneys' fees, and costs for a total of $28,377.30 (comprising $4,000 per infringement plus $11,437.65 in attorneys' fees and $939.65 in costs). (Compl. 5; Mot. 12; Decl. of Sharon D. Mayo ("Mayo Decl.") ¶¶ 4, 14–16, ECF No. 21-1.)  As the maximum amount of statutory damages that can be awarded for a single instance of copyright infringement

is $30,000 (notwithstanding the potential for higher damages in cases of willful infringement), the Court finds that the amount requested by Plaintiffs here is proportionate to the harm alleged. *See* 17 U.S.C. § 504(c)(1); *see, e.g.*, *Broadcast Music, Inc. v. Ponderosa Chophouse Enters., Inc.*, No. SACV 13-00229-CJC(RNBx), 2013 WL 12113406, at *3 (C.D. Cal. June 20, 2013) (awarding $6,000 per infringement); *Broadcast Music, Inc. v. Paden*, No. 5:11-02199-EJD, 2011 WL 6217414, at *4 (N.D. Cal. Dec. 14, 2011) (awarding $7,000 per infringement). Thus, this factor weighs in favor of granting default judgment.

### 4. *Possibility of Disputed Material Facts (Factor 5)*

The fifth *Eitel* factor considers the possibility of a dispute over material facts. *PepsiCo*, 238 F. Supp. 2d at 1177. Here, Defendants failed to oppose the Motion; thus, no factual dispute exists as the allegations in the Complaint are presumed true and deemed admitted. *See Vogel*, 992 F. Supp. 2d at 1013. This factor also favors default judgment.

### 5. *Excusable Neglect (Factor 6)*

The sixth *Eitel* factor considers whether Defendants' default is the result of excusable neglect. *Eitel*, 782 F.2d at 1472. No facts before the Court indicate that Defendants' default is due to excusable neglect. To the contrary, Plaintiffs served Defendants with the Summons and Complaint on May 14, 2020. (*See* Proofs of Service.) Additionally, Defendants were served with notice of the Motion on July 22, 2020. (Havens Decl. ¶ 6.) Defendants have not responded to the Summons or to the notice of the Motion. Thus, the Court finds Defendants' default is not due to excusable neglect, and this factor weighs in favor of granting default judgment.

### 6. *Policy Favoring Decision on the Merits (Factor 7)*

The seventh and final *Eitel* factor recognizes that "default judgments are ordinarily disfavored. Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, where a defendant fails to answer a complaint, "a decision on the merits [is] impractical, if not impossible." *PepsiCo*,

238 F. Supp. 2d at 1177. Here, Defendants have not responded to the Summons or Complaint, thereby rendering a decision on the merits impracticable. Thus, this factor weighs in favor of default judgment.

In summary, on balance of the *Eitel* factors, the Court determines that default judgment should be entered against Defendants. Accordingly, the Court turns to considering the relief requested by Plaintiffs.

## C. Requested Relief

Plaintiffs seek default judgment consisting of: (1) a permanent injunction prohibiting Defendants from publicly performing any songs in ASCAP's repertory, (2) statutory damages totaling $16,000, and (3) $11,437.65 in attorneys' fees and $939.65 in costs. (Mot. 14; Compl. 5; Mayo Decl. ¶¶ 4, 14–16.)

### *1. Permanent Injunction*

First, Plaintiffs seek a permanent injunction prohibiting Defendants from publicly performing any musical composition in ASCAP's repertory. (Mot. 10–11, 14.) A court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. "[Injunctive] relief is an 'extraordinary and drastic remedy' that 'is never awarded as of right.'" *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980 (9th Cir. 2011) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)). And a plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). But "[a]s a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

Here, Plaintiffs adequately show that all four *eBay* factors are met, and a permanent injunction is warranted. First, accepting Plaintiffs' allegations as true, "Plaintiffs have established ongoing irreparable injury because Defendants have infringed on the copyrights at issue despite their awareness of the licensing requirements and despite repeated requests to cease their infringement." *Ponderosa Chophouse*, 2013 WL 12113406, at *4; *see also Paden*, 2011 WL 6217414, at *5. Second, "monetary damages are insufficient because, absent an injunction, Plaintiffs would be forced to bring repeated lawsuits against Defendants to recover for ongoing infringement and expend an undue amount of resources in order to enforce their rights." *Ponderosa Chophouse*, 2013 WL 12113406, at *4 (citing *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009)). Third, "Defendants cannot claim legitimate hardship resulting from an injunction prohibiting them from engaging in illegal copyright infringement." *Id.* "[S]hould Defendants wish to publicly perform Plaintiffs' compositions, they need only obtain a license." *Id.* Fourth, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Aceplus, Inc.*, 2015 WL 13753299, at *10 ("[T]he public interest will be served by a permanent injunction because it will safeguard Plaintiffs' copyrights from future acts of infringement."). In short, all four *eBay* factors support granting injunctive relief.

Furthermore, the Court finds it appropriate to issue injunctive relief broadly covering all musical compositions in ASCAP's repertory. "The rationale behind the broad injunction against performance of all ASCAP songs is that plaintiffs in cases such as the one presently before the Court represent all ASCAP members, and thus, an injunction encompassing all ASCAP works is an appropriate remedy." *Controversy Music v. Shiferaw*, No. C03-5254 MJJ, 2003 WL 22048519, at *1 (N.D. Cal. July 7, 2003) (collecting cases). Thus, Defendants shall be enjoined from publicly performing, or causing or permitting the public performance of, any musical composition in

ASCAP's repertory in any premises operated, maintained, or controlled by Defendants, without license to do so.

### 2. *Statutory Damages*

Next, Plaintiffs request statutory damages in the amount of $4,000 per infringement, for a total damages award of $16,000. (Mot. 12, 14.) Under the Copyright Act, "the copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "In a case where . . . infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2). "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984); *see also F.W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 233 (1952) ("The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes.").

Here, the Court finds $16,000 is a fair and just damages amount. Plaintiffs represent that $16,000 "is approximately three to four times the amount of licensing fees that Defendants would have been required to pay had they obtained an ASCAP license and properly paid the license fees" because "had Limericks been properly licensed since July 1, 2018 . . . Defendants would have owed ASCAP approximately $4,400.00 in licensing fees." (Mot. 12.) First, "[c]ourts have consistently held that a statutory damages award three times the amount that the plaintiff would have received in licensing fees is appropriate under § 504(c)." *Paden*, 2011 WL 6217414, at *5 (citing cases). Second, Plaintiffs adequately show, and the Court finds, that Defendants' infringement was willful. ASCAP has sent Defendants somewhere between fifteen and

fifty cease and desist letters since July 2018. (*See* Compl. ¶ 16; Jones Decl. ¶ 13, Exs. 1–15.) Thus, the Court finds Defendants "were aware, or should have been aware, that their activities were infringing." *See Aceplus*, 2015 WL 13753299, at *5 (brackets omitted) (quoting *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003)) (finding willfulness where defendants "continued to permit unauthorized public performances despite [receiving a] cease and desist letter"). Given the willful nature of Defendants' infringement, the Court concludes that $4,000 per infringement, for a total of $16,000, constitutes a fair and just statutory damages award sufficient to compensate Plaintiffs and deter future infringements.

### 3. Fees and Costs

Plaintiffs also seek $11,437.65 in fees and $939.65 in costs. (Mot. 1–2, 13–14.) Under the Copyright Act, "the court in its discretion may allow the recovery of full costs," and it "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "[A] court may consider a number of pertinent factors in determining the reasonableness of an attorney's fees award." *MGSY Corp. v. LiveUniverse, Inc.*, No. 09-CV-0570 GAF (AGRx), 2010 WL 11596708, at *9 (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors)).[5] Where a party seeks attorneys' fees and costs on a motion for default judgment, those fees are calculated in accordance with the schedule provided by the Court in Local Rule 55-3. C.D. Cal. L.R. 55-3. The court may award attorneys' fees in excess of the schedule, however, upon a request at the time of entry of default judgment, as Plaintiffs have done here. *Id.*

---

[5] The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Quesada*, 850 F.2d at 539 n.1.

Plaintiffs' counsel submits declaration testimony detailing the time spent and hourly rate of the lawyers who worked on this case. (*See* Mayo Decl. ¶ 9, Ex. A.) Counsel declares that 16.5 hours were spent on this matter for a total of $10,830.15 in legal fees, and that the reported hourly rates "are or were the rates charged to and paid by the firm's clients during the relevant periods, and reflect all discounts that ASCAP receives as a long-time client of the firm." (*Id.* ¶¶ 11, 13, 15, Ex. A.) Counsel also declares that "Plaintiffs will likely incur another $607.50 in attorneys' fees for preparation for, and attendance at, the hearing on the Motion for Default Judgment." (*Id.* ¶ 16.) As for costs, counsel identifies $939.65 incurred in costs. (*Id.* ¶ 14, Ex. B.)

After reviewing the declaration testimony and spreadsheets submitted in support of the request for fees and costs, the Court finds that $10,830.15 in fees and $939.65 in costs are both supported and reasonable based on the experience of counsel, the nature of the case, and the services provided. *See Quesada*, 850 F.2d at 539 n.1. However, the Court declines to award the additional $607.50 in fees sought in connection with this Motion hearing because the Court deemed the Motion appropriate for decision without a hearing, and the additional fee request is not otherwise supported. Accordingly, the Court will award $11,769.80 in attorneys' fees and costs.

## V. CONCLUSION

In summary, Plaintiffs' Motion for Default Judgment is **GRANTED**. Defendants shall be permanently enjoined from publicly performing, or causing or permitting the public performance of, any musical compositions in ASCAP's repertory without a license. Plaintiffs shall also be awarded $16,000 in statutory damages, $10,830.15 in attorneys' fees, and $939.65 in costs. The Court will issue Judgment.

**IT IS SO ORDERED.**

January 5, 2021

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE